IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CARLOS ANTONIO SOLIS NOLASCO, | * |
| | * |
| Petitioner, | * |
| v. | *   Civil Action No. GLR-25-3847 |
| | * |
| KRISTI NOEM, et al., | * |
| | * |
| Respondents. | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Petitioner Carlos Antonio Solis Nolasco's ("Solis Nolasco" or "Petitioner") Petition for Writ of Habeas Corpus (ECF No. 1) and Respondents Kristi Noem, Todd Lyons, Jeremy Bacon, and Pamela Bondi's (collectively "Respondents" or "the Government") Motion to Dismiss (ECF No. 8). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant the Petition in part and deny it in part and deny the Motion as moot.

## I.    BACKGROUND

Petitioner Carlos Antonio Solis Nolasco is a citizen and native of El Salvador. (Pet. Writ Habeas Corpus ["Pet."] ¶ 5, ECF No. 1). He first entered the United States on July 9, 2015, due to fear of gangs and police harassment in El Salvador. (Aff. Carlos Antonio Solis Nolasco ["Feb. 7, 2024 Aff."] ¶¶ 1, 6–8, ECF No. 9-4). U.S. Border Patrol agents encountered him the following day and determined that he had entered the U.S. as an unaccompanied juvenile. (Mem. L. Supp. Response & Mot. Dismiss ["Response"] at 6,

ECF No. 8-1).[1] The U.S. Department of Homeland Security ("DHS") issued a Notice to Appear against Solis Nolasco, charging him with inadmissibility for entering the U.S. without first being admitted or paroled. (Id. at 6–7 (citing Immigration & Nationality Act ["INA"] § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i))). The U.S. Department of Health and Human Services placed Solis Nolasco in a shelter temporarily, and he was reunited with his mother in Temple Hills, Maryland on August 5, 2015. (Id. at 7).

On October 15, 2018, after being assaulted at a bar during what he believes was a dispute between rival gangs, Solis Nolasco filed a petition for "special immigrant" status. (Feb. 7, 2024 Aff. ¶ 8; Response at 7). This petition was later denied. (Response at 7). A few months later, law enforcement officers detained Solis Nolasco during a traffic stop because he did not have legal status. (Feb. 7, 2024 Aff. ¶¶ 12–13). U.S. Immigration and Customs Enforcement ("ICE") accused him of being part of a gang, but Solis Nolasco denies any involvement or participation in gangs. (Id. ¶ 13).[2]

Solis Nolasco applied for asylum while he was detained in late 2018. (Id. ¶ 14). On July 26, 2019, an Immigration Judge ("IJ") in Annandale, Virginia, denied his application and ordered that he be removed to El Salvador. (Response at 7). Solis Nolasco appealed that decision. (Id.). The Board of Immigration Appeals dismissed his appeal, and he was returned to El Salvador on February 27, 2020. (Id.; Feb. 7, 2024 Aff. ¶ 14; see also Notice

---

[1] Unless otherwise noted, citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.
[2] The Government alleges that Solis Nolasco was detained by the Federal Bureau of Investigation in 2018 and identified as a known MS-13 gang member. (Response at 3–4). Solis Nolasco, however, denies any participation in gangs, and the Government provides no evidence to support this allegation. (Feb. 7, 2024 Aff. ¶ 13; Reply at 11 n.6)

of Intent/Decision to Reinstate Prior Order ["NOI"] at 2, ECF No. 8-2). He then filed a petition for U Nonimmigrant Status on August 31, 2021, which remains pending. (Response at 7).

Solis Nolasco experienced harassment and violence by the police and gangs when he returned to El Salvador, so he fled back to the U.S. (Feb. 7, 2024 Aff. ¶¶ 15–21). He reentered the U.S. at McAllen, Texas in January 2021. (Id. ¶ 21). On October 23, 2023, he was arrested as a noncitizen previously removed under INA § 241(a)(5), 8 U.S.C. § 1231(a)(5). (Response at 7). DHS then issued a Notice of Intent/Decision to Reinstate Prior Order against him. (Id.). On March 29, 2024, an IJ in Elizabeth County, Pennsylvania, found that Solis Nolasco had established that it was more likely than not that he would be persecuted if he returned to El Salvador, and granted his request for withholding of removal to El Salvador under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). (Response at 7; Pet. ¶ 24; see also Withholding of Removal Order at 1, ECF No. 1-1). The Government did not appeal that decision and has not sought to reopen the case or rescind the withholding of removal order in the time since. (Pet. ¶¶ 24, 26). Solis Nolasco was released from detention soon after the IJ issued the withholding of removal order, and on April 22, 2024, he was placed on an Order of Supervision ("OSUP"). (Id. ¶ 24).

Solis Nolasco attended all scheduled ICE check-ins in accordance with his OSUP and did not otherwise violate the terms of his OSUP or receive convictions for any crimes since the OSUP has been in effect. (Id. ¶¶ 27, 29). He also obtained an Employment Authorization Document under 8 U.S.C. § 1231(a)(7) on July 22, 2024. (Id. ¶ 26).

On November 22, 2025, Solis Nolasco attended a scheduled ICE check-in in Baltimore. (Id. ¶ 28; Response at 8). According to Respondents, ICE Enforcement and Removal ("ERO") officers reviewed their records and determined that he was subject to a final order of removal as an inadmissible alien, so they detained him in the Baltimore Hold Room. (Response at 8; Notice of Revocation of Release ["NRR"] at 2, ECF No. 8-3). Officers then served Solis Nolasco with a Notice of Revocation of Release, which revoked his OSUP and stated that ICE intends to remove him to Mexico (NRR at 2), and a Notice of Removal, which notified Solis Nolasco of ICE's intent to deport him to Mexico (Notice Removal at 2, ECF No. 8-6; Response at 8). The following day, Solis Nolasco received a Notice of Intent/Decision to Reinstate Prior Order, which reinstated the removal order that became final on February 27, 2020 (NOI at 2), and a Warrant of Removal/Deportation (Warrant at 2, ECF No. 8-5). ICE officials conducted an informal interview on November 22, 2025, but Solis Nolasco declined to make a statement or answer questions. (Response at 8; Sworn Statement at 2–3, ECF No. 8-4). On November 25, 2025, Solis Nolasco, through counsel, submitted a declaration indicating his fear of removal to Mexico and requesting a Reasonable Fear Interview. (Aff. Carlos Antonio Solis Nolasco ["Fear Decl."] at 1–2, ECF No. 9-3). The Government has not yet afforded him a Reasonable Fear Interview. (Reply at 10). On December 13, 2025, Solis Nolasco was transferred to the El Paso Camp East Montana, where, as of December 19, 2025, he remains detained. (Paula Flores Roman Decl. ¶¶ 13–14, ECF No. 9-2).

On November 24, 2025, while detained in Baltimore, Solis Nolasco filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 1). Respondents

filed a consolidated Response and Motion to Dismiss on December 8, 2025. (ECF No. 8). Solis Nolasco filed a Reply in Opposition to the Government's Motion and in Support of his Petition on December 22, 2025. (ECF No. 9).

## II.   DISCUSSION

### A.   Standard of Review

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the United States Constitution or federal law. 28 U.S.C. § 2241(c)(3). If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. 28 U.S.C. § 2243.

### B.   Analysis

Solis Nolasco argues that his continued detention violates 8 U.S.C. § 1231 and his due process rights and that his removal to a third country without an opportunity to express his fear of persecution in that country violates his due process rights. (Pet. ¶¶ 33–42). The Government responds that ICE is authorized to detain and remove Solis Nolasco under 8 U.S.C. § 1231(a)(6), that his continued detention is constitutionally permissible, and that he has received all process due to him under law. (Response at 9–13). The Court will address each issue in turn.

1.   **Solis Nolasco's Detention Under 8 U.S.C. § 1231(a)**

There is no dispute that Solis Nolasco is detained under 8 U.S.C. § 1231(a). (See Response at 9; Reply Mem. Opp'n Resp'ts' Mot. Dismiss & Supp. Pet. Writ Habeas Corpus ["Reply"] at 5, ECF No. 9). Section 1231(a) provides that, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days" (the "removal period") and that "the Attorney General shall detain the alien" during the removal period. 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). Except when the noncitizen is detained in a case outside the immigration process or when a court orders a stay of removal, the removal period begins when the removal order becomes administratively final. Id. §§ 1231(a)(1)(B). If the noncitizen does not leave or is not removed during the removal period, then the noncitizen "shall be subject to supervision under regulations prescribed by the Attorney General" pending their removal. Id. § 1231(a)(3). But certain noncitizens, including those who are inadmissible under 8 U.S.C. § 1182, may be detained beyond the removal period. Id. § 1231(a)(6).

Solis Nolasco does not dispute that he is inadmissible under 8 U.S.C. § 1182, (See Response at 10; see generally Pet.; Reply); therefore, the Government may detain him beyond the removal period, see 8 U.S.C. § 1231(a)(6). Relying on Zadvydas v. Davis, 533 U.S. 678 (2001), however, Solis Nolasco argues that his continued detention is no longer permissible. (Pet. ¶ 34–39; Reply at 4–10).[3] In Zadvydas, the Supreme Court considered

---

[3] Solis Nolasco asserts that his continued detention violates 8 U.S.C. § 1231(a)(6) (Count I) and his due process rights (Count II). (Pet. at 8). Permitting a cause of action under 8 U.S.C. § 1231(a)(6), however, "would contravene 8 U.S.C. § 1231(h), which expressly provides that '[n]othing in this section shall be construed to create any

6

whether the Government may detain a noncitizen under 8 U.S.C. § 1231(a)(6) "<u>indefinitely</u> beyond the removal period or only for a period <u>reasonably necessary</u> to secure the alien's removal." 533 U.S. at 682. The two noncitizen-petitioners in <u>Zadvydas</u> received removal orders and had been detained well beyond their removal periods under 8 U.S.C. § 1231(a)(6), partly because their native countries and other countries to which they had connections had refused to accept them. <u>Id.</u> at 684–86. The petitioners challenged the extent of the Attorney General's authority to detain them on a seemingly indefinite basis despite the unlikelihood of the Government securing their removal. <u>Id.</u> at 684–86, 688.

In assessing that authority, the Supreme Court recognized that "Congress has 'plenary power' to create immigration law, and that the Judicial Branch must defer to Executive and Legislative Branch decisionmaking in that area." <u>Id.</u> at 695. "But that power," the Court explained, "is subject to important constitutional limitations." <u>Id.</u> And "an alien's liberty interest is, at the least, strong enough to raise a serious question as to whether, irrespective of the procedures used, the Constitution permits detention that is indefinite and potentially permanent." <u>Id.</u> at 696 (citation omitted). Considering the significant liberty interest at stake and the lack of "congressional intent to authorize

---

substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.'" <u>Umanzor-Chavez v. Noem</u>, No. SAG-25-1634, 2025 WL 2467640, at *2 (D.Md. Aug. 27, 2025) (quoting 8 U.S.C. § 1231(h)). The Court, therefore, will deny relief under Count I and will address the merits of Solis Nolasco's <u>Zadvydas</u> argument as to his due process claim under Count II. <u>See</u> <u>Ghamelian v. Baker</u>, No. SAG-25-2106, 2025 WL 2049981, at *3 (D.Md. July 22, 2025) (finding that 8 U.S.C. § 1231(h) did not permit a claim under 8 U.S.C. § 1231(a)(6), but construing petitioner's claim under that statute as one under the due process clause), <u>reconsideration denied</u>, No. SAG-25-02106, 2025 WL 2074155 (D.Md. July 23, 2025).

indefinite, perhaps permanent, detention," id. at 699, the Court held that a noncitizen's detention pending removal is presumptively reasonable only for six months (inclusive of the removal period), after which, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing," id. at 701.

Here, Solis Nolasco contends that his presumptively reasonable period expired on October 26, 2024—six months after his withholding of removal order became administratively final on April 29, 2024—and that the Government has provided "no factual basis to believe" that his removal will occur in the reasonably foreseeable future. (Pet. ¶¶ 34, 37; Reply at 4, 5 n.3). Respondents contend that Solis Nolasco's argument is premature because he has been detained only since November 22, 2025, and that even if his argument is proper at this juncture, he has not provided a good reason to believe that there is no significant likelihood that he will be removed in the reasonably foreseeable future. (Response at 10–12). For the reasons set forth below, the Court finds that Solis Nolasco's argument is not premature and that he has met the "good reason" requirement under Zadvydas.

      **a.**    **The Six-Month Presumption**

The Government first suggests that Solis Nolasco's argument under Zadvydas is "premature" because he has been detained only since November 22, 2025. (Id.). The premise of this argument is that Solis Nolasco's six-month period restarted when he was detained on November 24, 2025. Some Courts agree with that premise, finding that the six-month period restarts upon re-detention, see, e.g., Abedi v. Carter, No. 25-3141-JWL, 2025

WL 3209009, at *1 (D.Kan. Oct. 6, 2025), or pauses while the noncitizen is not detained and resumes upon re-detention, see, e.g., Rodriguez-Guardado v. Smith, 271 F.Supp.3d 331, 335 n.8 (D.Mass. 2017) (citation omitted). Other courts, however, "broadly agree that 'the six-month period [under Zadvydas] does not reset when the government detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again.'" Diaz-Ortega v. Lund, No. 1:19-CV-670-P, 2019 WL 6003485, at *7 n.6 (W.D.La. Oct. 15, 2019) (quoting Sied v. Nielsen, 17-CV-06785-LB, 2018 WL 1876907, at *6 (N.D.Cal. Apr. 19, 2018)), report and recommendation adopted, No. 1:19-CV-670-P, 2019 WL 6037220 (W.D.La. Nov. 13, 2019); Villanueva v. Tate, No. CV H-25-3364, 2025 WL 2774610, at *9 (S.D.Tex. Sept. 26, 2025) ("The government's contention that it may avoid the holding of Zadvydas and re-start the six-month presumptively constitutional detention clock by simply releasing and then re-detaining a noncitizen has no basis in either the statutes, the regulations, or Zadvydas itself."); Zavvar v. Scott, No. TDC-25-2104, 2025 WL 2592543, at *4 (D.Md. Sept. 8, 2025) ("[T]here is, at a minimum, a reasonable argument that the six-month period runs continuously from the beginning of the removal period, even if the noncitizen is not detained throughout that period.").

This Court agrees with the latter position and finds that Solis Nolasco's six-month period did not restart upon his re-detention on November 22, 2025. See Cordon-Salguero v. Noem, No. GLR-25-1626, Mot. Hr'g Tr. 33:23–34:4 (D.Md. June 23, 2025) (ECF No. 21) (finding that the six-month period was not tolled upon petitioner's release from

detention in 2018). Therefore, Solis Nolasco's six-month period expired in August 2020,[4] and his challenge against his detention is not premature.[5]

### b. The Likelihood of Solis Nolasco's Removal

The Government argues that, even if Solis Nolasco's argument is not premature, he has not provided good reason to believe that his removal is not likely to occur in the reasonably foreseeable future. (Response at 12). This Court disagrees.

Solis Nolasco has been granted withholding of removal from the only country to which he has a claim to citizenship or legal immigration status. (Pet. ¶¶ 23–24; Reply at 3, 9; Withholding of Removal Order). This "substantially increases the difficulty of removing him." Munoz-Saucedo v. Pittman, 789 F.Supp.3d 387, 398 (D.N.J. 2025). Solis Nolasco also has expressed fear of removal to Mexico, the only third country designated in the notices issued on November 22 and 23, 2025. (See Fear Decl. at 2; NRR at 2; Notice Removal at 2). According to DHS's March 2025 Guidance Regarding Third Country Removals (the "DHS Guidance"), the Government still must provide Solis Nolasco a

---

[4] Using April 29, 2024 as the date on which the removal order became administratively final, Solis Nolasco suggests that his six-month period expired in October 2024. (Reply at 5 n.3). It appears from the undisputed facts, however, that the relevant removal order became final on February 27, 2020. (Response at 7; Feb. 7, 2024 Aff. ¶ 14; NOI at 2 (reinstating February 27, 2020 removal order)). Under 8 U.S.C. § 1231(a)(5), if a noncitizen reenters the U.S. after having been deported under a removal order, "the prior order of removal is reinstated from its original date . . . ." Solis Nolasco's six-month period, then, ended on August 27, 2020. Even if the six-month period ended in October 2024 as Solis Nolasco suggests, however, the Court's analysis and conclusion remain the same.

[5] As this Court explained in Cruz Medina v. Noem, 794 F.Supp.3d 365 (D.Md. 2025), the six-month presumption of reasonableness shifts the burdens between the Government and the noncitizen-detainee, but it does not prohibit judicial review of a noncitizen's detention for six months. Id. at 375–76. Thus, even if Solis Nolasco's six-month period had not yet expired, his Petition still would not be premature.

10

Reasonable Fear Interview and, if the U.S. Citizenship and Immigration Services ("USCIS") finds that he more likely than not will be persecuted in Mexico, then his case will go to an Immigration Court for further proceedings. (Guidance re Third Country Removals ["DHS Guidance"] at 3, ECF No. 8-7). The fact that such processes remain to be done indicates that removal is not likely to occur in the reasonably foreseeable future. Zavvar, 2025 WL 2592543, at *8; Munoz-Saucedo, 789 F.Supp.3d at 399.

Solis Nolasco further states, and the Government does not dispute, that he has complied with his OSUP for over a year (Pet. ¶¶ 27, 29; see generally Response), during which time Respondents could have, but apparently did not, work towards securing Solis Nolasco's removal (Reply at 6). Moreover, by granting Solis Nolasco an Employment Authorization Document in July 2024, the Attorney General determined that Solis Nolasco could not be removed either because the countries designated in his removal order refused him or because his removal "is otherwise impracticable or contrary to the public interest." 8 U.S.C. § 1231(a)(7).

The Government has provided no information to suggest that Solis Nolasco's removal will occur in the reasonably foreseeable future other than a general statement that his case is "under current review by the Government of Mexico for third country removal." (Response at 8). Respondents cite to the Notice of Revocation of Release for this information (id.), but the Notice does not contain that language—it states simply that "ICE is taking steps to remove [Solis Nolasco] to MEXICO" (NRR at 2). Additionally, Respondents cite no travel documents or requests for such, and they provide no information

on how far along ICE is in the process of securing Solis Nolasco's removal to Mexico. (See generally Response).

Overall, Solis Nolasco has provided good reason to believe that his removal to Mexico is not likely to occur in the reasonably foreseeable future, and the Government's bare assertions that his removal to Mexico is likely to occur in the reasonably foreseeable future, without more, are insufficient to rebut Solis Nolasco's contrary showing. See Cordon-Salguero v. Noem, No. GLR-25-1626, Mot. Hr'g Tr. at 34:23–35:18 (D.Md. June 23, 2025) (ECF No. 21) (finding Government failed to rebut petitioner's showing under Zadvydas where petitioner had no claim to immigration status in Mexico, and Government provided no evidence on the status of requests for travel documents or evidence that Mexico would accept and allow petitioner to remain in Mexico). Solis Nolasco's continued detention, therefore, violates his due process rights as interpreted under Zadvydas.

### 2. Solis Nolasco's Removal to a Third Country

Alongside his detention, Solis Nolasco argues that his removal to a third country without "an individualized determination as to whether he will be persecuted or tortured" in that country and without IJ review of a negative fear finding violates his right to procedural due process. (Pet. ¶ 41; Reply at 11–14). Respondents contend that Solis Nolasco has received all process due to him under 8 U.S.C. § 1231(b)(1)—the provision that governs to which country a noncitizen may be deported—and the DHS Guidance on third country removals. (Response at 13). Respondents further argue that this claim is more appropriately addressed in D.V.D. v. U.S. Department of Homeland Security, 778 F.Supp.3d 355 (D.Mass. 2025), a class action suit that is currently on appeal in the Court

12

of Appeals for the First Circuit (Response at 13–17). This Court agrees that this claim is more appropriately addressed in D.V.D.

Section 1231(b)(1) permits third country removals when other options (i.e., removal to the country from which the noncitizen travelled to the U.S., to the noncitizen's native country, or to a country in which the noncitizen has citizenship or legal immigration status) are not available. 8 U.S.C. §§ 1231(b)(1). According to the DHS Guidance, the Government may remove a noncitizen to a third country so long as "that country has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured," and "the Department of State believes those assurances to be credible . . . ." (DHS Guidance at 2–3). If the third country does not provide such assurances or the Department of State does not believe such assurances to be credible, then DHS must inform the noncitizen of the third country to which they will be removed and, if the noncitizen "affirmatively states a fear of removal" to that country, "USCIS will generally screen the alien within 24 hours of referral from the immigration officer" to determine "whether the alien would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal." (Id. at 3). If the noncitizen does not meet that standard, then the Government may remove them to the third country—no IJ review of that negative fear finding is required. (Id.). If the noncitizen meets that standard, then USCIS must refer the matter to the Immigration Court. (Id.).

In D.V.D., noncitizens who were subject to third country removal orders challenged the DHS Guidance as failing to provide the constitutionally required notice and opportunity

13

to be heard on their individualized fears of removal to third countries. 778 F.Supp.3d at 368–69. The district court certified a class of:

> [a]ll individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

Id. at 378, 386. The court further found that "blanket diplomatic assurances" do not satisfy due process or the "statutory and regulatory framework" under which DHS must "undertake an individualized assessment as to the sufficiency of such assurances . . . ." Id. at 390. As a result, the court granted in part the plaintiffs' request for a preliminary injunction and ordered the Government to satisfy more fulsome procedural requirements before removing the plaintiffs to the third countries designated in their removal orders. Id. at 392–93. The Government appealed to the First Circuit. The Supreme Court stayed the preliminary injunction pending disposition of that appeal but left the class certification intact. Dep't of Homeland Sec. v. D.V.D., 145 S.Ct. 2153 (2025).

Here, Solis Nolasco does not dispute that he is a member of the D.V.D. class due to his impending third country removal and the nature of the instant claim. (See Reply at 14–17). Therefore, in the interest of "[b]asic principles of comity and judicial economy," this Court finds that Solis Nolasco's claim regarding his removal to Mexico (Count III) is more appropriately addressed in D.V.D. and will deny the Petition as to that claim without prejudice to seeking the same or similar relief through the D.V.D. litigation. I.V.I. v. Baker,

No. JKB-25-1572, 2025 WL 1519449, at *2 (D.Md. May 27, 2025); see also Tanha v. Warden, Balt. Det. Facility, No. JRR-25-2121, 2025 WL 2062181, *8 (D.Md. July 22, 2025) (finding that third country removal claim more appropriately addressed in D.V.D. and denying without prejudice); Ghamelian v. Baker, No. SAG-25-2106, 2025 WL 2049981, at *3, 5 (D.Md. July 22, 2025) (same).

### 2. The Attorney General as a Proper Respondent

Finally, the Government contends that Defendant Bondi, the U.S. Attorney General, is not a proper respondent in this case because she does not have the power to produce Solis Nolasco before this Court. (Response at 18). This Court disagrees.

The Government cites to 28 U.S.C. § 2242 and Rumsfeld v. Padilla, 542 U.S. 426 (2004), as support for its argument (Response at 18). Section 2242 states that a petition for a writ of habeas corpus shall include "the name of the person who has custody over [the petitioner] and by virtue of what claim or authority, if known." 28 U.S.C. § 2242. Similarly, Section 2243 states that a writ of habeas corpus "shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243. In Padilla, the Supreme Court considered whether the U.S. President and Secretary of Defense were proper respondents to a habeas petition filed by a person who had been detained as an "enemy combatant." 542 U.S. at 430, 434. Turning to 100-year-old precedent, the Court concluded that 28 U.S.C. §§ 2242 and 2243 "contemplate a proceeding against some person who has the immediate custody of the party detained," such that "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Id. at 434–35 (quoting Wales v.

15

Whitney, 114 U.S. 564, 574 (1885)). The Court, however, left unresolved the question of "whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation." Id. at 435 n.8. Thus, "the Government's reliance exclusively on the holding in Padilla does little to support its contention that" Bondi is not a proper respondent here. Jarpa v. Mumford, 211 F.Supp.3d 706, 723 (D.Md. 2016).

Courts are split on whether the "immediate custodian" rule of Padilla applies to immigration proceedings. See id. at 723–24 (collecting cases). This Court finds persuasive the reasoning of courts that hold that the rule does not apply in such cases. See id. at 724 ("Applying the immediate custodian rule here would yield the 'impractical result' of having the immediate custodian (the Warden of a detention facility) unable to grant the relief requested. Rather the relief sought can only practically be delivered by the head of the agency in charge of interpreting and executing the immigration laws." (quoting Sanchez-Penunuri v. Longshore, 7 F.Supp.3d 1136, 1148 (D.Colo. 2013))). As the Court of Appeals for the Second Circuit explained in Henderson v. I.N.S., 157 F.3d 106 (2d Cir. 1998), the Attorney General has a "unique role" in immigration matters:

> [T]he extraordinary and pervasive role that the Attorney General plays in immigration matters is virtually unique. Thus, the Attorney General continues to be "in complete charge of the proceedings leading up to the order directing the[ ] removal [of aliens] from the country" and has "complete discretion to decide whether or not removal shall be directed."

Id. at 126 (quoting Ahrens v. Clark, 335 U.S. 188, 199 (1948) (Rutledge, J., dissenting)). Considering the Attorney General's authority in this context, this Court, like other district courts, finds that the immediate custodian rule does not apply and that the Attorney General

is a proper respondent where, as here, "the petitioner challenges [his] detention under the immigration laws." Farez-Espinoza v. Chertoff, 600 F.Supp.2d 488, 494 (S.D.N.Y. 2009); see also Somir v. United States, 354 F.Supp.2d 215, 217 (E.D.N.Y. 2005) ("[T]he Attorney General is a proper respondent in immigration cases where the petitioner is challenging the government's efforts to remove him from this country."); Carmona v. Aitken, No. 14-CV-05321-JSC, 2015 WL 1737839, at *4 (N.D.Cal. Apr. 10, 2015) ("The Court thus concludes that the proper respondents are at least the DHS Secretary and Attorney General because of their far-reaching authority to administer detention and removal proceedings of noncitizens."); Hernandez v. Sessions, No. CV 18-01483-PHX-GMS (DMF), 2018 WL 11426587, at *1 n.1 (D.Ariz. May 18, 2018) (declining to dismiss Attorney General and Secretary of DHS as respondents); Mandarino v. Ashcroft, 318 F.Supp.2d 13, 17 (D.Conn. 2003) (finding Attorney General was proper respondent to noncitizen-detainee's habeas petition). The Court, therefore, denies the Government's request to dismiss Defendant Bondi as a Respondent.

### 3. The Government's Motion to Dismiss

After a Petition for a Writ of Habeas Corpus is filed, the proper response by the Respondent is the filing of an Answer, to be followed by a Reply filed by the Petitioner. See Rules 2, 5, Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"); see also Habeas Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a).").

There is no corresponding action or motion to dismiss under the Habeas Rules. Although the Federal Rules of Civil Procedure "may" be applied to a habeas petition, see

Habeas Rule 12, the Court ordinarily does not apply Federal Rule of Civil Procedure 12, which governs the filing of a motion to dismiss, to a habeas petition because such a motion is effectively duplicative of an Answer to a Petition, in which all relevant arguments that could be made on such a motion can and should be made.

Here, where the Motion to Dismiss was simultaneously Respondents' Answer through a single brief addressing both the Motion and the Answer (see ECF No. 8), the Court finds that (1) there was no need for a Motion to Dismiss; and (2) the Court's resolution of the Petition necessarily resolves the Motion to Dismiss. The Court, therefore, denies Government's Motion to Dismiss as moot. See Tanha, 2025 WL 2062181, *8 (addressing habeas petition and denying as moot Government's motion to dismiss).

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Solis Nolasco's Petition for Writ of Habeas Corpus (ECF No. 1) and DENIES as MOOT the Government's Motion to Dismiss (ECF No. 8). A separate Order follows.

Entered this 5th day of January, 2026.

/s/
George L. Russell, III
Chief United States District Judge